UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

AMR MOHSEN and ALY MOHSEN,

        Defendants.

CASE NO. CR. 03-0095 WBS

ORDER RE: DEFENDANTS' MOTION TO DISMISS COUNTS 1-4 AND 10-19

----oo0oo----

Defendants Amr and Aly Mohsen are charged jointly in Count One of the Superseding Indictment with conspiracy to obstruct justice and to commit perjury in violation of 18 U.S.C. § 371, and in Count Nineteen with obstruction of justice in violation of 18 U.S.C. §§ 1503 and 2.  Defendant Amr Mohsen is also charged separately in Counts Two through Four with perjury in violation of 18 U.S.C. § 1621(1); in Count Ten with subornation of perjury in violation of 18 U.S.C. § 1622; and in Counts Eleven through Eighteen with mail fraud in violation of 18 U.S.C. § 1341 and 2.  Id.  Defendant Amr Mohsen moves to dismiss Counts One through Four and Counts Ten through Nineteen.  Amr

1

Mohsen's co-defendant Aly Mohsen joins in this motion with respect to Counts One and Nineteen.

I.  Factual and Procedural Background

The following is taken from Aptix v. QuickTurn, No. 98-00762, 2000 WL 852813 (N.D. Cal. June 14, 2000) and Aptix v. QuickTurn, 269 F.3d 1369 (Fed. Cir. 2001), except where otherwise indicated by citation.  On September 20, 1989, Aptix Corporation (hereinafter "Aptix") filed patent number 5,544,069 (hereinafter "'069 patent").  The '069 patent was issued by the United States Patent and Trademark Office on August 6, 1996.  It claims the invention of general purpose "field programmable" circuit boards that computer programmers can use to reconfigure the electronic components of an integrated circuit.

On February 26, 1998, Aptix sued QuickTurn Design Systems (hereinafter "QuickTurn") for infringement of its '069 patent.  The Local Civil Rules in this district required Aptix to disclose the claims it would assert and the corresponding dates on which those claims were invented.  Aptix disclosed that it would assert four claims (4, 5, 7, and 8) on April 13, 1998, but stated that it was unable to provide the dates of conception because the inventor, Amr Mohsen, was out of the country at that time.  Included in the initial disclosures were seventeen pages from the "1989 Notebook", and these pages contained information about "research, design, and development" of the invention.[1]

---

[1] Proving a conception date earlier than the date the patent was filed is important for preventing articles and other inventions from being considered "prior" art that can invalidate the patent by rendering it obvious or anticipated.  See Am. Standard v. Pfizer, 722 F. Supp. 86 (D. Del. 1989).  "In order to

1        Between April and December of 1988, Amr and Aly Mohsen
2   allegedly engaged in a series of actions that are the basis for
3   the charges at issue in this motion.  Amr Mohsen claimed that he
4   had found another engineering notebook that was allegedly started
5   in 1988 and that contained evidence of an earliest date of
6   conception.  On May 4, 1998, based on the 1988 notebook, Aptix's
7   lawyer served a disclosure that listed the date of conception for
8   all the claims as July 31, 1988 (approximately one year earlier
9   than the filing date).

10       During discovery, many of the parties' disputes
11  centered around the notebooks.  On June 4, 1998, defendant Amr
12  Mohsen brought the 1988 and 1989 notebooks to his deposition as
13  evidence of his research and development that led to the '069
14  patent.  Aptix only provided QuickTurn with copies of these
15  notebooks.  Quickturn moved for production of the originals of
16  the notebooks on November 24, 1998.  Shortly thereafter, Amr
17  Mohsen reported that the original notebooks had been stolen from
18  his car.

19       On December 8, 1998, in an opposition to a motion by
20  QuickTurn, Aptix stated, "These notebooks . . . represent crucial
21  evidence for Aptix regarding the date of conception of Dr.
22  Mohsen's invention and diligence in reducing the invention to
23  practice.  Dr. Mohsen's first notebook is likely to be
24  particularly important to Aptix's prosecution of this case

---

26  receive an effective date earlier than the filing date of [a
    patent] for the purpose of determining whether a reference is
27  prior art, a patentee has the burden of proving by clear and
    unequivocal evidence, that the invention was both conceived and
28  reduced to practice before the application date." Id. at 109.

3

because the contents support Aptix's position that Dr. Mohsen conceived his invention before the date of any of the alleged prior art offered by QuickTurn." Aptix, 2000 WL 852813 at *22.

Approximately one year later, on December 6, 1999, Judge Alsup held an evidentiary hearing at which he examined evidence, assessed the credibility of witnesses, and determined the authenticity of the notebooks. Amr Mohsen took the stand at this hearing but asserted his Fifth Amendment right and did not answer any questions. Following that hearing, Judge Alsup found that Amr Mohsen made additions in the form of text and diagrams to the 1989 notebook after the dates listed on the pages and attempted to pass those changes off as originals. Amr Mohsen was also found to have falsely backdated entries in the notebook to August 6, 1989. Moreover, the entire 1988 notebook was found to be a fraud.[2]

Approximately two months later, Judge Alsup held a two-day Markman hearing to interpret and construe the claims of the patent. (Markman Hr'g Tr. 303, Feb. 2, 2000.) On February 29, the final ruling on claim construction was issued by the court. (Markman Hr'g Tr. 352, Feb. 29, 2000.) In that ruling, the court construed the principal claim in the suit, claim 4, and discussed dependent claims. (Defs.' Mot. to Dismiss Counts 1-4 and 10-19 Ex. G at 4.) The court described the invention disclosed as follows: "a handy one-piece board containing all electronic

---

[2] Within the 1988 notebook, Amr Mohsen created entries with respect to programmability, a central feature of the '069 patent. Amr Mohsen also fabricated information about "one or more substrates," relating to the use of multiple boards in the invention, which was a contested issue in the patent case.

1 components and first-level PIC's [or programmable integrated
2 circuits]."  (Id. at 7.)  Only certain terms were in dispute.
3 The court found that multiple boards were contemplated by the
4 invention, but that the important components would have to be
5 present on the same substrate, contrary to QuickTurn's
6 contentions.  (Id. at 6.)  The court construed the term
7 "substrate" to include "a printed circuit board (and/or a layer
8 of printed circuit board)."  (Id. at 5.)  The court also
9 construed the terms "electronic components" to include connectors
10 capable of receiving electronic components, although QuickTurn
11 argued otherwise.  (Id. at 7.)  The court construed "component
12 contacts" to mean types of contacts found in the substrate(s) to
13 which a user can selectively attach electronic components.  (Id.)
14 The court found that the term group means "two or more," and not
15 "three or more," as Aptix argued.  The court also held, contrary
16 to the plaintiff's contention for a narrower construction, that
17 "each second-level PIC is connected to at least two but not
18 necessarily all of the first-level PIC's.  (Id. at 8, 11.)  Thus,
19 some of the court's findings favored the plaintiff and others
20 favored the defendant.

21         On April 3, 2000, QuickTurn filed a submission that
22 relied on two claims of prior art to invalidate the '069 patent
23 for obviousness.  (Defs.' Mot. Dismiss 5.)  QuickTurn had
24 previously made other claims of prior art, but refrained from
25 asserting them in this filing.  (Id. n.1)  One claim was based a
26 combination of references: the "Butts engineering notebook" dated
27 June 3, 1988, a related patent application, an article published
28 in January 1975, and a report from 1971.  (Defs.' Mot. Dismiss

1  Ex. A at 5.)  Based on this prior art claim, Mohsen's date of
2  invention needed to predate June 3, 1988.  The other claim set an
3  even earlier date, based on the 1965 "Spandorfer Report" in
4  combination with other references.  (Id. at 6.)  Neither the
5  district court nor the Federal Circuit conclusively decided
6  whether either of these prior art references anticipated the '069
7  patent or rendered it obvious.
8          Also on April 3, 2000, Aptix filed a Fourth Amended
9  Initial Disclosure of Asserted Claims in which it asserted that
10 the effective filing date of the patent (September 20, 1989) as
11 the earliest date of invention, instead of the date in Mohsen's
12 notebook (July 31, 1988).  (Defs.' Mot. Dismiss Ex. A at 2.)
13 This disclosure was filed after Judge Alsup's factual findings
14 about falsified information in the notebooks.
15         On June 14, 2000, Judge Alsup dismissed Aptix's
16 complaint on the basis of Aptix's unclean hands in falsifying
17 information in the notebooks, and found the case to be
18 exceptional such that Aptix was required to pay attorney's fees
19 and costs.  He further found the patent to be unenforceable.  The
20 Federal Circuit upheld dismissal of the suit and award of fees
21 and costs, but vacated the finding of unenforceability of the
22 patent.
23         Defendants now move to dismiss Counts One through Four
24 and Ten through Nineteen of the indictment, contending that "the
25 government will not be able to prove that the alleged perjuries
26 were material to the civil patent litigation because, as a matter
27 of law, the 1988 notebook was not relevant to the civil patent
28 case."  (Defs.' Mot. to Dismiss 4 (emphasis in original).)

## II. Discussion

Under Federal Rule of Criminal Procedure 12(b)(2), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of general issue." The Ninth Circuit has applied the Rule 12 standard to hold that "a motion to dismiss is generally 'capable of determination' before trial 'if it involves questions of law rather than fact.'" United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993), quoting United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986) (overturning district court's grant of a motion to dismiss based on the finding that Nukida's actions did not affect commerce. The motion to dismiss required factual determinations and thus was a premature challenge to the sufficiency of the government's evidence.); see also United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).

It is fundamental that Rule 12(b) may not be used to challenge the sufficiency of the evidence supporting an indictment. United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1995). In Jensen, the Ninth Circuit found that "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." Id. (quoting United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975)). The court further noted that "[a] motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . . The Court should not consider evidence not appearing on the face of the indictment." Id. (quoting United States v. Marra, 481 F.2d 1196, 1199-1200 (6th Cir. 1973)); accord, United States v. Alonso, 143 F.3d 772, 776-

77 (2d Cir. 1998)("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

Where materiality is an element of a crime, it is generally a mixed question of law and fact for the jury to decide.  United States v. Gaudin, 515 U.S. 506, 511 (holding that materiality of a perjured statement was an issue for the jury).  In Gaudin, the Court explained that "the application-of-legal-standard-to-fact sort of question posed by [the issue of whether a statement was material], commonly called a 'mixed question of law and fact,' has typically been resolved by juries."  The Ninth Circuit has applied this standard in cases where materiality is an element of the crimes charged.  United States v. Keys, 133 F.3d 1282, 1286 (9th Cir. 1998)(explicitly overruling a previous holding and jury instruction that assumed materiality was a matter of law for the judge to decide); see also United States v. Knapp, 120 F.3d 928 (9th Cir. 1997) ("the Supreme Court's reasoning [in Gaudin] applies with equal potency to every crime of which materiality is an element." (quoting <u>United States v. Uchimura</u>, 12 F.3d 1282, (9th Cir. 1997))).

Defendants in this case contend that the 1988 notebook and Amr Mohsen's testimony concerning the notebook were immaterial to the patent dispute between Aptix and Quickturn as a matter of law because the definitions given to claim elements in Judge Alsup's construction of the claims rendered the prior art QuickTurn cited that post-dated the notebook legally irrelevant.

1  Moreover, because the 1988 notebook set a date of invention that
2  was earlier than the filing date, but not early enough to defeat
3  the prior art QuickTurn ultimately relied on, defendants argue
4  that Mohsen's fabrication could not help him win the race to
5  invent.[3]

6       A statement is material if it has "a natural tendency
7  to influence, or [be] capable of influencing, the decision of the
8  decisionmaking body to which it was addressed." Kungys, 485 U.S.
9  at 770; see also Gaudin, 515 U.S. at 509.  In addition, "[t]o be
10 material a false statement need only be 'relevant to any
11 subsidiary issue under consideration.'" United States v. Lococo,
12 450 F.2d 1196, 1199 (9th Cir. 1971).  Significantly, materiality
13 is tested at the time of the false statement or mailing. United
14 States v. McKenna, 327 F.3d 830, 839 (9th Cir. 2003).[4]

15       Thus, the timing of the acts forming the basis for
16 defendants' alleged perjury and mail fraud informs a decision on

---

[3] Defendants argue that the reason QuickTurn's counsel withdrew pieces of prior art that postdated the notebook was that they were irrelevant, and that QuickTurn relied on two pieces of prior art predating the July 31, 1988 date in the notebook because this prior art conclusively established that Aptix's invention was invalid for being obvious.  This argument rests only on defendants' own suspicions about the motivations of QuickTurn's counsel.  Counsel's decisions may have been motivated by other considerations altogether.  For example, QuickTurn's counsel may have decided to rely on fewer pieces of prior art so as not to confuse the jury and picked the earliest pieces of prior art available.  Alternatively, QuickTurn's counsel may have chosen the scientific texts that were easiest for laypeople to interpret.

[4] Defendants argue that the government's reliance on McKenna is unfounded because McKenna is inapposite.  Although McKenna is distinguishable because it addresses the situation in which a defendant testified at trial and therefore put her credibility at issue, 327 F.3d at 839, it is helpful for the guidance it provides regarding the legal standards for perjury.

9

materiality. Defendants' alleged actions forming the basis of the counts that are the subject of this motion were conducted between April and December of 1988, and therefore were completed approximately one year before the Markman hearing held by Judge Alsup. In addition, these actions took place more than a year before QuickTurn's supplemental submission that the defendants claim rendered the notebooks irrelevant. Therefore, defendant's argument that the 1988 notebook was immaterial rests upon events that occurred much later in the course of the underlying proceedings. At the time defendants undertook these acts and created a notebook falsifying the date of conception, when the invention was conceived was an open and important question. As Judge Alsup expressed:

> In the early stages of patent litigation, before the landscape of the relevant prior art is fully illuminated, a patent owner cannot usually predict the exact combinations of art that might later be deemed to render a patent obvious or anticipated. Experience teaches, however, that any date of invention prior to the presumed date of invention (the date of the patent application) will ordinarily place the patent owner in a stronger position by rendering any intervening art immaterial.

Aptix, 2000 WL 852813 at *25. At the time it was introduced, the evidence in the inventor's notebooks establishing an earlier date of invention would therefore have a natural tendency to influence the trier of fact in determining an important issue in the case – the date the invention was conceived.[5]

---

[5] By introducing a date of conception that was more than a year earlier than the date the patent was filed, Aptix was able to foreclose the entire universe of prior art published after that date. It is unclear whether there were other pieces of prior art that would have been relevant but were not introduced

10

Amr Mohsen is alleged to have fabricated information related to the content of the invention in both the 1988 and 1989 notebooks, including the types of substrates used and the programmability of the invention. Programmability was an important issue in the case. The meaning of the term "substrate" was also in dispute and was later construed in the Markman hearing. (Defs.' Mot. to Dismiss Counts 1-4 and 10-19 Ex. G at 6.) This information from the notebooks about claim elements could have been very material to the case at the time the testimony and notebooks were presented, because information from the notebooks could have served as extrinsic evidence to help resolve ambiguity and further the court's understanding of the patent. See Vitronics Corp. v. Conceptronic Inc., 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

Finally, defendants argue that materiality cannot be established because Judge Alsup "did not make [a] finding that the Mohsen 1988 notebook would ever be a matter to be considered by the ultimate fact-finder in the civil patent suit." (Defs. Mot. Dismiss at 15.) Judge Alsup made no such finding because the evidence falsified in the notebooks demonstrated defendants' unclean hands, and therefore required dismissal of the case. Contrary to defendants' argument, it seems unlikely that Aptix would be dismissed from suit, and that the dismissal would be affirmed by the Federal Circuit, for falsifying information that was immaterial to the patent case. The doctrine of unclean hands

---

because of the introduction of the notebook, but considering such a question would necessarily involve factual matters best left for the jury.

1 would not allow such an outcome:

> [Courts of equity] apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has <u>no relation</u> to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

<u>Keystone Driller v. Gen. Excavator Co.</u>, 290 U.S. 240, 245 (1933) (internal citation omitted)(emphasis added).

For all of the reasons discussed above, this court cannot determine before trial that the information in defendants' two engineering notebooks and in Amr Mohsen's testimony about those notebooks was immaterial as a matter of law.

IT IS THEREFORE ORDERED that defendants' motion to dismiss Counts One and Nineteen and defendant Amr Mohsen's motion to dismiss Counts Two through Four and Ten through Eighteen of the Superseding Indictment be, and the same hereby are, DENIED.

DATED: December 2, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE