UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

AMR MOHSEN and ALY MOHSEN,

        Defendants.

CASE NO. CR. 03-0095 WBS

ORDER RE: DEFENDANT'S
MOTION TO DISMISS COUNTS 11-19
(DOUBLE JEOPARDY)

----oo0oo----

Defendant Amr Mohsen ("defendant") moves to dismiss Counts Eleven through Eighteen of the Superseding Indictment, charging him with mail fraud in violation of 18 U.S.C. § 1343, and Count Nineteen, charging him with obstruction of justice in violation of 18 U.S.C. § 1503, upon the ground that the prosecution on those charges is barred by the double jeopardy clause of the Fifth Amendment.

I.  Factual and Procedural Background

The following is taken from Aptix v. QuickTurn, No. 98-00762, 2000 WL 852813 (N.D. Cal. June 14, 2000) and Aptix v.

QuickTurn, 269 F.3d 1369 (Fed. Cir. 2001), except where otherwise indicated by citation.  On September 20, 1989, Aptix Corporation (hereinafter "Aptix") filed patent number 5,544,069 (hereinafter "'069 patent").  The '069 patent was issued by the United States Patent and Trademark Office on August 6, 1996.

On February 26, 1998, Aptix sued QuickTurn Design Systems (hereinafter "QuickTurn") for infringement of its '069 patent.  The Civil Local Rules of the Northern District required Aptix to disclose the claims it would assert and the corresponding dates on which those claims were invented.  Aptix disclosed that it would assert four claims (4, 5, 7, and 8) on April 13, 1998, but stated that it was unable to provide the dates of conception because the inventor (defendant) was out of the country.  Included in the initial disclosures were seventeen pages from the "1989 Notebook", and these pages contained information about the process of invention.

Between April and December of 1988, defendant and his brother Aly Mohsen allegedly engaged in a series of actions that are the basis for the charges at issue in this motion.  Defendant claimed that he had found another engineering notebook that was allegedly started in 1988 and that contained evidence of an earliest date of conception.  On May 4, 1998, based on the 1988 notebook, Aptix's lawyer served a disclosure that listed the date of conception for all the claims as July 31, 1988 (approximately one year earlier than the filing date of the patent).  On June 4, 1998, defendant brought the 1988 and 1989 notebooks to his deposition as evidence of his research and development that led to the '069 patent.  Aptix only provided QuickTurn with copies of

2

these notebooks.  Quickturn moved for production of the originals
of the notebooks on November 24, 1998.  Shortly thereafter,
defendant reported that the original notebooks had been stolen
from his car.

Defendant took the stand at this hearing but asserted
his Fifth Amendment right and did not answer any questions.
Following that hearing, Judge Alsup found that "Amr Mohsen, the
founder, chairman, chief executive officer, and lead inventor of
Aptix Corporation, fabricated the entire 1988 Notebook, numerous
entries in the 1989 Notebook, the three corroborative entries in
his Daytime and the rest of the post-theft 'corroboration' – all
in an effort to defraud defendant and this Court."  Aptix v.
QuickTurn, 2000 WL 852813 at *23.

On June 14, 2000, Judge Alsup dismissed Aptix's
complaint on the basis of Aptix's unclean hands in falsifying
information in the notebooks, found the case to be exceptional as
a result of Aptix's fraudulent actions such that Aptix was
required to pay attorney's fees and costs, and further found the
patent to be unenforceable.  The Federal Circuit upheld dismissal
of the suit and the award of fees and costs in November 2001, but
vacated the finding of unenforceability of the patent.  In its
ruling, the court held that " [t]he doctrine of unclean hands
does not reach out to extinguish a property right based on
misconduct during the litigation to enforce that right."
Finally, the court found that when defendant asserted a "security
interest" in Aptix's assets, it was an attempt to make a
fraudulent transfer (presumably to protect the assets from the
judgment), and QuickTurn was thus still able to levy on Aptix's

1  bank accounts in an attempt to satisfy a portion of the judgment

2  it obtained.[1]

3  II.  Discussion

4          There are at least three fundamental reasons why Counts

5  Eleven through Nineteen are not barred by the Double Jeopardy

6  Clause.

7          A.  No Criminal Punishment

8          The Double Jeopardy Clause "protects only against the

9  imposition of multiple criminal punishments for the same

10  offense."  Hudson v. United States, 522 U.S. 93, 98 (1997)

11  (citations omitted).  The punishment which defendant claims to

12  have been criminal - i.e., dismissal of Aptix's lawsuit, award of

13  attorneys' fees, and Judge Alsup's invalidation of defendant's

14  security interest in Aptix's assets - was in fact civil.

15          In Hudson, the Supreme Court listed seven factors to

16  consider in determining whether the "clearest proof" has

17  established that penalties are criminal, rather than civil.  In

18  applying these factors, a court should look to whether: (1) the

19  sanction involves affirmative disability or restraint, such as

20  imprisonment, (2) it has historically been regarding as

21  punishment, (3) scienter, or knowledge, is required for the

22  sanction, (4) its operation will promote the traditional aims of

23  punishment, namely retribution and deterrence, (5) the behavior

24

25          [1]   The government notes that defendant's claim of a
   security interest in Aptix's assets occurred after terminating
26  sanctions were awarded and was voided by Judge Alsup.  (USA's
   Opp'n to Mot. to Dismiss for Double Jeopardy 10.)   It is unclear
27  how Judge Alsup's finding that defendant had no security interest
   in Aptix's assets amounts to a criminal charge of mail fraud or
28  obstruction of justice.

4

to which it applies is already a crime, (6) it has a rational
alternative purpose, and (7) the sanction appears excessive in
relation to the alternative purpose.  <u>Hudson</u>, 522 U.S. 93, 99-
100, 104 (1997).

        The majority of the factors counsel against the court
finding that the "clearest proof" has demonstrated that the
finding of unclean hands was a criminal penalty levied against
defendant, as discussed below.

        First, the dismiss the civil lawsuit and the
requirement of paying attorneys' fees did not involve affirmative
disability or restraint, such as the "infamous punishment of
imprisonment."  Second, these civil and equitable remedies have
not historically been regarded as punishment.  <u>Repub. Molding</u>
<u>Corp. v. B. W. Photo Util.</u>, 319 F.2d 347, 349 (1963)("The concept
[of unclean hands] invoking the denial of relief is not intended
to serve as punishment for extraneous transgressions . . . ").
Thus, the first two factors counsel in favor of finding the
remedies to be civil in nature.

        Third, arguably, finding that a defendant has unclean
hands requires knowledge, or scienter, so this factor cuts
against a determination that the sanction was civil.  Fourth, the
award of attorneys fees was for the primary purpose of
compensating opposing counsel rather than to promote the
traditional aims of punishment - retribution and deterrence.  <u>See</u>
<u>Repub. Molding Corp. v. B. W. Photo Util.</u>, 319 F.2d 347, 349
(1963).  Thus, this factor counsels in favor of a determination
that the sanctions were civil in nature.

        Fifth, because perjury and obstruction of justice are

5

also crimes, this factor weighs in favor of determining that the
sanctions are criminal.  Sixth, the civil sanctions imposed had a
more compelling alternative purpose.  "What does seem clear is
that misconduct in the abstract . . . does not constitute unclean
hands.  The concept invoking the denial of relief is not intended
to serve as punishment for extraneous transgressions, but instead
is based upon 'considerations that make for the advancement of
right and justice.'" Repub. Molding Corp. v. B. W. Photo Util.,
319 F.2d 347, 349 (1963)(quoting Keystone Driller Co. v. Gen.
Excavator Co., 290 U.S. 240, 245, (1933)).

Finally, dismissal of the civil lawsuit for equitable
considerations was not excessive to meet its aim; rather, it was
an appropriate way for the court to ensure "that equity will not
lend its aid to enable a party to reap the benefit of its
misconduct." Keystone, 290 U.S. at 245.[2]  A court's attempt to
strike an equitable balance and render a just outcome does not
translate into a punishment upon a defendant who was not even a
party to the suit.

In sum, five factors suggest that the sanction at issue
is civil, and only two weigh in favor of the sanction being
considered criminal.  Thus, balancing the factors delineated in
Hudson demonstrates that defendant failed to show the "clearest
proof" that dismissal of Aptix's lawsuit amounted to a criminal
punishment, and that, by extension, the current charges violate

_____

[2]    The defendant notes that in Keystone, the court
dismissed a patent case without prejudice, and here, the court
dismissed Aptix's complaint with prejudice.  (Def.'s Reply  2.)
However, the court's explanation in Keystone of the doctrine of
unclean hands is still instructive.

1  the Double Jeopardy Clause.

2        B.  <u>Not the Same Offense</u>

3        The charges in Counts Eleven through Nineteen of the
4  Superseding Indictment are not the same as any offenses for which
5  defendant was previously punished.  The Double Jeopardy Clause in
6  the Fifth Amendment to the United States Constitution provides
7  that, "No person shall . . . be subject for the same offence to
8  be twice put in jeopardy of life or limb."  A defendant is not
9  impermissibly punished for the "same offense" twice if each
10 offense contains at least one element that is not contained in
11 the other.  <u>United States v. Dixon</u>, 509 U.S. 688, 696 (1993);
12 <u>Blockburger v. United States</u>, 284 U.S. 299 (1932).  Additionally,
13 it is not sufficient to establish a double jeopardy violation
14 that the same <u>conduct</u> was the basis for the offenses – the
15 <u>offenses</u> charged must be the same in order to establish a double
16 jeopardy violation.  <u>Id.</u> at 704.

17       Preliminarily, Judge Alsup's evidentiary finding
18 relating to the falsification of information in "an effort to
19 defraud the defendant and [the c]ourt" in <u>Aptix v. Quickturn</u>,
20 2000 WL 852813 at *23, hardly equates to a criminal conviction
21 for fraud.  Even if it did, the elements of the court's finding
22 of "unclean hands" are not the same as the elements of any of the
23 charges in Counts Eleven through Nineteen of the Superseding
24 Indictment in this case.  This court is hard-pressed to denote
25 the "elements" of the doctrine of unclean hands, but the
26 government suggests these two: "(1) an unconscionable act; (2) in
27 relation to a matter in litigation," and the defense appears to
28 find them acceptable.  (USA's Opp'n to Def.'s Mot. to Dismiss for

Double Jeopardy 2.)  At least one "element" of the doctrine of
unclean hands, unconscionability, is not an element of mail fraud
or obstruction of justice.  See 18 U.S.C. § 1341; 18 U.S.C. §§
1503.  Further, mail fraud need not occur "in relation to a
matter in litigation."  Conversely, at least one element of mail
fraud (use of the mails) and at least one element of obstruction
of justice (corruption) is not an "element" of a finding of
unclean hands.

### C.   The United States Not a Party

When the United States is not a party to the first
action, the action cannot be subject to the Constitutional
protection against double jeopardy in a subsequent prosecution
brought by the United States.  United States v. Ely, 142 F.3d
1113, 1121 (9th Cir. 1997) (citing United States v. Heffner, 85
F.3d 435, 439 (9th Cir. 1996)).  Even if the court were to find
that defendant was a party in the civil patent litigation,
because the government was not a party to that litigation, the
Double Jeopardy Clause cannot now be invoked against the
government for the charges currently pending before the court.
Ely, 142 F.3d at 1121 (finding that even when the FDIC, a federal
agency acting as a receiver for a private party, sought punitive
damages against the defendant, the defendant could not later
allege double jeopardy based on that action).

In United States v. Dixon, 509 U.S. 688 (1993), the
Court applied double jeopardy protection to bar a subsequent
prosecution where the first prosecution was for criminal
contempt.  The holding in that case, however, does not affect the
rule that the United States must be a party to both prosecutions

8

1  in order for double jeopardy to apply.  The Court in <u>Dixon</u>
2  emphasized that the first prosecution was for nonsummary criminal
3  contempt, which does constitute a crime against the United States
4  under 18 U.S.C. § 402 (<u>See</u> <u>Steinert v. United States District</u>
5  <u>Court</u>, 543 F.2d 69 (9th Cir. 1976)), and the United States was a
6  party to the underlying action in which the contempt was
7  adjudicated.

8          IT IS THEREFORE ORDERED THAT defendants' motion to
9  dismiss Counts Eleven through Nineteen for violation of the
10 Double Jeopardy Clause of the Fifth Amendment be, and the same
11 hereby is, DENIED.
12 DATED:  December 21, 2005
13
14
15                    WILLIAM B. SHUBB
16                    UNITED STATES DISTRICT JUDGE
17
18
19
20
21
22
23
24
25
26
27
28

9