UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

AMR MOHSEN and ALY MOHSEN,

        Defendants.

CASE NO. CR. 03-0095 WBS

ORDER RE: DEFENDANT'S
MOTION TO SUPPRESS COPIES OF
HIS JAIL MAIL

----oo0oo----

        Defendant Amr Mohsen ("Defendant") moves to suppress
the copies of his personal mail that have been provided to the
government by authorities at two Alameda County Jails since June
2004.

I.   Factual and Procedural Background

        On March 25, 2003, a 19-count indictment was filed
charging defendant with one count of conspiracy to obstruct
justice and to commit perjury in violation of 18 U.S.C. § 371
(Count 1), four counts of perjury in violation of 18 U.S.C. §
1621 (1) (Counts 2-5), one count of subornation of perjury in

1

1    violation of 18 U.S.C. § 1622 (Count 10), eight counts of mail

2    fraud in violation of 18 U.S.C. § 1341 (Counts 11-18), and one

3    count of obstruction of justice in violation of 18 U.S.C. § 1503

4    (Count 19).  The trial of these charges was originally scheduled

5    for March 31, 2004 before Judge Alsup.  (Pl.'s Mem. in Opp'n to

6    Def.'s Mot. to Disqualify 6.)  On March 27, 2004, defendant was

7    arrested based upon information that he was planning to flee the

8    country.  (Id.)  On March 29, 2004, Judge Alsup ordered defendant

9    to be detained in the Santa Rita jail pending trial.  (Id.)

10        While defendant was detained at the Santa Rita jail, an

11    inmate contacted law enforcement and reported that defendant

12    wanted him to facilitate acts of murder and witness intimidation.

13    (Def.'s Mot. to Suppress Jail Cell Evidence Ex. B (Application &

14    Aff. for a Search Warrant ¶¶ 4, 5, 18).)  The government

15    subsequently requested that jail authorities copy all of

16    defendant's non-legal mail and deliver those copies to the

17    government.  (USA's Mem. in Opp'n to Suppress Jail Mail 2.)  The

18    government began receiving defendant's correspondence on June 3,

19    2004; the earliest mail the government has received was dated May

20    26, 2004.  (Id.)

21        On July 27, 2004, the grand jury issued a superseding

22    indictment charging defendant with contempt of court in violation

23    of 18 U.S.C. § 401(3) (Count 20), attempted witness tampering in

24    violation of 18 U.S.C. § 1512(b)(1) (Count 21), solicitation to

25    commit arson in violation of 18 U.S.C. § 373 (Count 22), and

26    solicitation to commit the murder of a federal judge in violation

27    of 28 U.S.C. § 373 (Count 23).  Defendant now moves to suppress

28    his jail mail, arguing that the interception and copying of his

1    mail violated his First and Fourth Amendment rights and occurred

2    in violation of the Santa Rita Jail's own policies.  (Def.'s Mot.

3    to Suppress Jail Mail 1, 2.)

4    II.  Discussion

5            In a line of cases beginning with Stroud v. United

6    States, 251 U.S. 15, 21 (1919), the courts have deferred to

7    prison authorities in finding that legitimate penological

8    interests justify the examination of a inmate's communications.[1]

9    See, e.g., United States v. Whalen, 940 F.2d 1027, 1035 (7th Cir.

10   1991) ("[B]ecause of their reasonable concern for prison security

11   and inmates' diminished expectations of privacy, prison officials

12   do not violate the constitution when they read inmates' outgoing

13   letters." (quoting United States v. Brown, 878 F.2d 222, 225 (8th

14   Cir. 1989)(emphasis added)))[2]; United States v. Vallez, 653 F.2d

15   403, 406 (9th Cir. 1981) ("The warrantless seizure of a sealed

16   letter from a prisoner's cell therefore violates the fourth

17   amendment, unless it serves a 'justifiable purpose of

18   imprisonment or prison security.'")(quoting United States v.

19   Savage, 482 F.2d 1371, 1373 (9th Cir. 1973)); Savage, 482 F.2d at

20   1373 ("[A]bsent a showing of some justifiable purpose of

21   imprisonment or prison security the interception and photocopying

22

23        [1]    Stroud had a somewhat expansive holding.  Since it was
     decided, Stroud has been limited to the proposition for which it
     is cited herein.  United States v. Whalen, 940 F.2d 1027 (7th
24   Cir. 1991)("Modern cases have limited Stroud to situations in
     which prison officials have seized outgoing letters in the
25   exercise of legitimate government interests.").

26        [2]    The court notes that although defendant has asserted
     that his First Amendment rights were violated by the government's
27   seizure of his jail mail, he has not supported this conclusory
     statement with any argument.  The court declines to research and
28   determine an issue that defendant has not meaningfully raised.

                                    3

of the [inmate's] letter [by prison officials] was violative of
the fourth amendment . . . .").

The interception and copying of defendant's mail in
this case served a "legitimate penological purpose."  After
receiving information from a confidential informant that
defendant was attempting to harass witnesses and solicit murder,
the government had reason to suspect that defendant was engaging
in illegal activity.  (Def.'s Mot. to Suppress Jail Cell Evidence
Ex. B (Application & Aff. for a Search Warrant ¶¶ 5, 18).)  To
prevent defendant from using the mails to commit new offenses, to
keep the jail from becoming the locus of criminal conduct, and to
ensure order and security within the jail, the government
monitored defendant's mail.  (USA's Mem. in Opp'n to Mot. to
Suppress Jail Mail 2-3.)

In Thornborough v. Abbott, 490 U.S. 401, 412 (1989),
the Supreme Court noted that outgoing correspondence may
implicate the authorities' interest in prison security if
involves "escape plans, plans relating to ongoing criminal
activity, and threats of blackmail or extortion."  See also
Witherow v. Paff, 52 F.3d 264, 266 (9th Cir. 1995) ("Preventing
prisoners from disseminating offensive or harmful materials
[through the mail] clearly advances the orderly administration of
prisons, the rehabilitation of prisoners, and the security of
those receiving the materials.").  Here, defendant's mail may
have been the vehicle for criminal activity or may have included
plans relating to ongoing criminal activity and threats.  In
fact, the government states that it "may introduce numerous
letters that the defendant sent while in prison . . . as direct

4

1  evidence of guilt on the charged offenses . . . ."  (USA's Mem.

2  in Opp'n to Mot. to Suppress Jail Mail 2.)  Therefore, monitoring

3  and copying of defendant's mail served a legitimate penological

4  purpose and thus did not offend the Constitution.

5        Furthermore, because he has not established that a

6  Constitutional violation occurred, defendant has no grounds to

7  ask for suppression of the letters.  The exclusionary rule

8  operates to exclude evidence that was obtained, whether directly

9  or indirectly, through an illegal search and seizure.  Segura v.

10  U.S., 468 U.S. 796, 804 (1984).  As explained above, the seizure

11  of defendant's mail was not illegal or unconstitutional.  Courts

12  often admit evidence properly derived from viewing an inmate's

13  jail mail.  See United States v. Workman, 80 F.3d 688, 699 (2d

14  Cir. 1996); Whalen, 940 F.2d at, 1034-35; Stroud, 251 U.S. at 21-

15  22; People v. Garvey, 99 Cal. App. 3d 320, 324 (1980).

16        Defendant also argues that the government's

17  interception and copying of his mail occurred in violation of the

18  jail's policies, but similarly fails to explain how such a

19  violation would merit exclusion of evidence.  Defendant claims

20  that because the rules state that "[a]ll mail will be opened and

21  inspected for contraband," government authorities should not have

22  copied the mail to be used as evidence at trial.  (Def.'s Mot. to

23  Suppress Jail Mail.)  As the government points out,

24  correspondence related to an ongoing scheme to threaten witnesses

25  would fall under the term "contraband."  In addition, even if the

26  jail authorities contravened their own regulations, this would

27  not amount to a Constitutional violation.  The Ninth Circuit has

28  held that "[a]bsent a constitutional violation or a

5

1  congressionally created remedy, violation of an agency regulation

2  does not require suppression of evidence." <u>United States v. Ani</u>,

3  138 F.3d 390, 392 (9th Cir. 1998) (citing <u>United States v.</u>

4  <u>Hensel</u>, 699 F.2d 18 (1st Cir. 1983)).  Therefore, suppression of

5  defendant's mail seized during his imprisonment is not warranted.

6       Finally, there is no merit to defendant's argument that

7  there is no longer good cause for continuing to copy defendant's

8  mail after he was transferred to the Dyer Detention Center and

9  placed in Administrative Segregation. (Def.'s Reply 2.)  Simply

10 because defendant no longer has contact with other inmates does

11 not mean that can no longer solicit help from others.  To the

12 contrary, an argument can be made that because he no longer has

13 contact with other inmates he is more likely to solicit help

14 through communications with people on the outside.

15      IT IS THEREFORE ORDERED that defendants' motion to

16 suppress his jail mail be, and the same hereby is, DENIED.

17 DATED:  December 22, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

6