UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

AMR MOHSEN and ALY MOHSEN,

        Defendants.

CASE NO. CR. 03-0095 WBS

ORDER RE: DEFENDANTS'
MOTION TO DISMISS COUNTS 1-3
10, 19, AND 20

----oo0oo----

       Defendants Amr and Aly Mohsen ("Defendants") move to dismiss counts 1-3, 10, 19, and 20 of the March 15, 2005 Superseding Indictment.  In support of this motion, defendants argue that counts 2 and 3 are multiplicitous; counts 1, 10, and 19 fail to allege materiality as an element of the offense; and the prosecution of count 20 was not commenced by a judicial officer as required under 18 U.S.C. § 3148(c).

I.   Factual and Procedural Background

       The facts are well known to the parties and have been reiterated by the court several times in recent motions.

1

Therefore, an abbreviated set of facts is set forth below.

On February 26, 1998, Aptix sued QuickTurn Design Systems (hereinafter "QuickTurn") for infringement of its '069 patent.  Between April and December of 1998, defendants, who are brothers, allegedly engaged in a series of actions that are the basis for the charges at issue in this motion.  The parties in the lawsuit contested the authenticity of two notebooks, one allegedly written in 1988 and another in 1989, that included information about the date that the inventor conceived of the patented invention.[1]  Some time after discovery began, Judge Alsup held an evidentiary hearing about the notebooks and determined that, "Amr Mohsen, the founder, chairman, chief executive officer, and lead inventor of Aptix Corporation, fabricated the entire 1988 Notebook, numerous entries in the 1989 Notebook, the three corroborative entries in his Daytimer and the rest of the post-theft 'corroboration' – all in an effort to defraud defendant and this Court."  Aptix v. QuickTurn, 2000 WL 852813, at *23 (N.D. Cal. 2000).

On March 15, 2005, the grand jury returned a superseding indictment (only the counts relevant to this motion are listed here).  Defendants Aly and Amr Mohsen are charged with conspiracy to obstruct justice and to commit perjury in violation of 18 U.S.C. § 371 (Count 1) and obstruction of justice in violation of 18 U.S.C. § 1503 (Count 19).  Defendant Amr Mohsen

---

[1]    Proving a conception date earlier than the date the patent was filed is important for preventing articles and other inventions from being considered "prior" art that can invalidate the patent by rendering it obvious or anticipated.  See Am. Standard v. Pfizer, 722 F. Supp. 86 (D. Del. 1989).

1  is also charged separately with perjury in violation of 18 U.S.C.

2  § 1621 (Counts 2-3), subornation of perjury in violation of 18

3  U.S.C. § 1622 (Count 10), and contempt of court in violation of

4  18 U.S.C. § 401(3) (Count 20).

5  II.  Discussion

6          An indictment must inform the defendant of "the nature

7  and cause of the accusation in order that he may meet it and

8  prepare for trial, and after judgment, be able to plead the

9  record and judgment in bar of a further prosecution for the same

10 offense." Wong Tai v. United States, 273 U.S. 77, 80-81 (1927).

11 Additionally, the indictment serves to "ensure that the defendant

12 is being prosecuted on the basis of facts presented to the grand

13 jury and to allow the court to determine the sufficiency of the

14 indictment." United States v. Lane, 765 F.2d 1376, 1380 (1985).

15          A.  Multiplicity of counts 2-3

16          Defendants contend that counts 2 and 3 of the

17 indictment charge defendant for the same offense and are

18 therefore multiplicitous.  (Def.'s Mot. to Dismiss Counts 1-3,

19 10, 19, and 20 at 3.)  They ask that, as a remedy, the court

20 order the government to elect between these counts.  (Id. at 6.)

21 Where counts of an indictment are found to be multiplicitous, the

22 court in its discretion may require election either before trial

23 or after trial before imposition of sentence.  See Ball v. United

24 States, 470 U.S. 856 (1985); United States v. Johnson, 130 F.3d

25 1420, 1426 (10th Cir. 1997); United States v. Roy, 408 F.3d 484,

26 491 (8th Cir. 2005); United States v. Luskin, 926 F.2d 372, 378

27 (4th Cir. 1991); but see United States v. Maldonado-Rivera, 922

28 F.2d 934, 982 (2nd Cir. 1990).

1    For some of the reasons expressed by the Tenth Circuit
2  in affirming the district court's refusal to require the
3  government to elect between multiplicitous counts prior to trial,
4  this court in the exercise of its discretion will make its
5  determination on the issue of multiplicity now, rather than wait
6  until after verdict.  See Johnson, 130 F.3d, at 1426 ("The risk
7  of a trial court not requiring pretrial election is that it 'may
8  falsely suggest to a jury that a defendant has committed not one
9  but several crimes.'") However, the court's ruling at this stage
10 of the proceeding will be subject to reconsideration on the
11 motion of the defendant after the verdict but before judgment in
12 the event that the jury should return a verdict of guilty on both
13 counts 2 and 3.

14    "The test for multiplicity—charging a single offense in
15 more than one count—is whether each separately violated statutory
16 provision 'requires proof of an additional fact which the other
17 does not.'"  United States v. McKittrick, 142 F.3d 1170, 1176
18 (9th Cir. 1998) (quoting Blockburger v. United States, 284 U.S.
19 299, 304 (1932)); see also United States v. Vargas-Castillo, 329
20 F.3d 715, 719 (9th Cir. 2003).[2]  In Gebhard v. United States, 422
21 F.2d 281, 290 (9th Cir. 1970), the Ninth Circuit found that

22

23    [2]    Defendant correctly notes that in United States v.
24 Salas-Camacho, 859 F.2d 788, 791 (9th Cir. 1988) the Ninth
   Circuit set out a different two-part test for determining whether
   multiplicitous counts for making false statements under 18 U.S.C.
25 § 1001 are permissible ("The first is whether a declarant was
   asked the same question and gave the same answer.  The second
26 element is whether later false statements further impaired the
   operations of the government.")  That test, however, applies
27 where the defendant is charged with making precisely the same
   statement at two different times.  It is inapplicable to the
28 circumstances here.

perjury counts were multiplicitous when, "for all practical purposes," they were based upon the same question.  As an illustration, the following exchange was deemed multiplicitous by the court in Gebhard:

> Count 3: [Question:] Did you ever receive a transmitter, receiver or both from Jacobs?
>
> Answer: No.
>
> Count 4. [Question:] Did Jacobs give you a device to be repaired?
>
> Answer. No.

Gebhard, 422 F.2d at 290.

Although the questions asked were not identical, the court in Gebhard reasoned that a "[s]ingle punishment for a single lie should suffice," and that Count 3 was based on the same question, practically speaking, as the question implicated by Count 4.  The court did not elaborate on its finding that the questions were the same, but it is clear that each separately violated statutory provision does not require "proof of an additional fact which the other does not."  McKittrick, 142 F.3d at 1176.  This was because evidence that proved the second question would conclusively prove the first.  Looking at the plain language of the questions, it is evident that if Jacobs had given the defendant a transmitter, receiver, or both, Jacobs would have given the defendant a device to be repaired.  Thus, after receiving an answer to the second question, the answer to the first would be apparent, and both questions address the same underlying issue.  Therefore, the defendant's answers could only support one count of perjury.

1    In the case presently before the court, Counts 2 and 3
2 each relate to different questions asked of defendant Amr Mohsen
3 in the a deposition held on April 29, 1999.  (Def.'s Mot. to
4 Dismiss Counts 4.)   Count 2 is based upon the following
5 questioning:

6    Question: Did you ever deliver the original notebooks
7    to [Aptix's attorneys] or an independent expert so that
8    they could do an independent test on those notebooks to
9    see what the test on those notebooks would show?
10   Answer: No.
11   Question: You never did that yourself?
12   Answer: No.
13 Count 3, on the other hand, is based upon this exchange:
14   Question: Other than the limited periods of time
15   necessary to make copies by both your lawyers and
16   [QuickTurn's lawyers], were the original of those
17   notebooks ever out of your possession?
18   Answer: No.
19 Unlike the questioning in Gebhard, the second question asked of
20 defendant did not fully encompass the first, nor did the first
21 question fully encompass the second.  Proving the falsity of each
22 of his answers requires proof of an additional fact which the
23 other does not.

24    The first question asked whether defendant delivered
25 the notebooks to an independent expert so that the expert could
26 do tests on them.  The second question asked if the notebooks
27 were ever out of defendant's possession.  He could have delivered
28 the notebooks to an expert for testing without giving up

possession of them.  Conversely, the notebooks could have left
his possession under some circumstances other than giving them to
an expert for testing.  Indeed, the government represents that
intends to prove just that, i.e., (1) that defendant delivered
the notebooks to an expert for testing while defendant remained
present, thus not surrendering possession of them, and (2) that
defendant surrendered possession of the notebooks on a separate
occasion conceivably for other purposes.

The test is whether each offense requires proof of an
additional fact that the other does not.  United States v.
Kennedy, 726 F.2d 546, 547-48 (9th Cir. 1984).  Because counts 2
and 3 meet that test, they are not multiplicitous and the
government need not elect between them.

A.  Motion to dismiss Counts 1, 10, and 19 for failure
to allege materiality

Next, defendants move to dismiss Counts 1, 10, and 19
for failure to allege materiality of these counts in the
indictment.  As an initial matter, the government concedes that
count 10 is deficient for failure to allege materiality as an
element of the offense.  Therefore, the court finds that count 10
is deficient and should be dismissed from the indictment.

However, materiality is not an element of Count 19,
obstruction of justice.  See 18 U.S.C. §§ 1503; see also United
States v. Ruggiero, 934 F.2d 440, 446 (2d Cir. 1991) ("18 U.S.C.
§ 1503 contains no materiality element."); United States v.
Langella, 776 F.2d 1078, 1082 (2d Cir. 1985) ("Under [§ 1503],
the government need only establish that a witness has
deliberately attempted to frustrate a grand jury's investigation,

7

not that the statements made were false or material" (internal

citations omitted).); <u>United States v. Rankin</u>, 1 F. Supp. 2d 445,

454 (E.D. Pa. 1998) (Materiality is not an element of § 1503).[3]

Therefore, Count 19 should not be dismissed.

        Count 1 requires a slightly different inquiry, because

it encompasses conspiracy to obstruct justice <u>and</u> to commit

perjury. (Mar. 15, 2005 Superseding Indictment.) "An indictment

charging a conspiracy under 18 U.S.C. § 371 should allege an

agreement, the unlawful object toward which the agreement is

directed, and an overt act in furtherance of the conspiracy."

<u>Lane</u>, 765 F.2d at 1380. In addition, "[c]ourts do not require as

detailed a statement of an offense's elements under a conspiracy

count as under a substantive count." <u>United States v. Tavelman</u>,

650 F.2d 1133, 1137 (9th Cir. 1981) (<u>citing</u> <u>Wong Tai</u>, 273 U.S. at

81; <u>United States v. Pheaster</u>, 544 F.2d 353, 360-61 (9th Cir.

1976); <u>United States v. Cecil</u>, 608 F.2d 1294, 1296-97 (9th Cir.

1979).) Thus, even if a perjury charge should be dismissed for

failure to allege materiality, the same would not necessarily

hold for a conspiracy charge.

---

        [3]    Defendant cites United States v. Buckley, 192 F.3d 708,
710 (7th Cir. 1999) for the proposition that materiality "becomes
a focus of inquiry" in obstruction of justice that is founded
upon perjury. (Defs.' Mot. to Dismiss Counts 4.) However,
elements are the requirements of a crime, and "in order for a
jury trial of a crime to be proper, all elements of the crime
must be proved to the jury (and . . . proved beyond a reasonable
doubt)." Apprendi v. New Jersey, 530 U.S. 466, 499 (2000)
(Thomas, J., concurring). The fact that materiality may become a
focus of inquiry on the charge of obstruction does not establish
that it is an element of the crime that must be proven to the
jury beyond a reasonable doubt. Defendants do not cite any cases
that establish that materiality is an element of obstruction of
justice. Therefore, the motion to dismiss Count 19 for failure
to allege materiality should be denied.

1          In Lane, the court found that an indictment
2   sufficiently stated a conspiracy charge even though it was
3   lengthy, confusing, and lacked explicit allegations concerning
4   one portion of the government's theory of the case. Lane, 765
5   F.2d at 1380 (1985).  The court was persuaded of the sufficiency
6   of the indictment by the fact that a particular type of
7   conspiracy was alleged, and there was a recitation of overt acts
8   "sufficient to apprise Lane of the facts upon which the charges
9   were based and what the government would attempt to prove at
10  trial." Id.

11          The test here is whether the indictment informs
12  defendants of the charges before them such that he can adequately
13  prepare for trial, enables defendants to recognize instances of
14  double jeopardy, ensures that defendants are tried on the basis
15  of facts that were presented to the grand jury, and allows the
16  court to determine the sufficiency of the indictment. Id.  In
17  Count 1 of the instant case, the Superseding Indictment alleges
18  that defendants "did knowingly and intentionally conspire to . .
19  . commit perjury in testimony given in connection with the Aptix
20  case, in violation of 18 U.S.C. §§ 1503 and 1621." (Mar. 15, 2005
21  Superseding Indictment ¶ 19.)  In addition, the indictment also
22  describes the factual basis for the count and provides specific
23  information about the circumstances in which defendants "made
24  material false statements under oath." (Id. ¶ 20.)  The
25  indictment also provides citations to the statutes for the
26  underlying offenses. (Id.)  Here, defendants have been given
27  more information in the indictment than was included in the
28  indictment in Lane, and this information is sufficient to allow

defendant to prepare for trial and recognize instances of double jeopardy.  The facts to be proven at trial were also presented to the grand jury, as clearly demonstrated by the description of the specific instances of perjury upon which Count 1 is based. Therefore, the court finds that Count 1 of the indictment is sufficient to survive a motion to dismiss.

B.   Motion to dismiss Count 20 for improper prosecution

Defendant likewise cannot succeed on his motion to dismiss Count 20, in which he is charged with contempt of court for allegedly violating the conditions of his release. Defendant unconvincingly argues that 18 U.S.C. § 3148(c), empowering "judicial officers" to "commence a prosecution for contempt . . . if the [defendant] has violated a condition of release," delineates the government's power to prosecute contempt in its entirety and, by bestowing the power on "judicial officers," necessarily withholds this power from federal prosecutors.  Such a limitation upon the executive's power to pursue criminal contempt charges runs contrary to case precedent.[4]

_____

[4] Indeed, defendant must rely solely on dicta in United States v. Herrera, 29 F. Supp. 2d 756 (N.D. Tex. 1998), to make his point.  Herrera involved a pretrial services officer's attempt to initiate revocation of pretrial release pursuant to the government attorney's power to do so under 18 U.S.C. § 3148(b).  Id. at 757.  In deciding whether the pretrial services officer had such power, the court opined "[t]hat § 3148(b) authorizes only the attorney for the government to initiate a revocation proceeding, and § 3148(c) empowers only the judicial officer to commence a prosecution for contempt . . . ."  Id. at 760-61 (emphasis added).  The court finds this interpretation, put forth without any analysis of subsection c, unpersuasive. Moreover, that court's understanding of 3148(c) does not foreclose the federal prosecutor's ability to file an indictment for contempt because, as the discussion in the text further

In <u>Steinert v. United States District Court for the District of Nevada</u>, 543 F.2d 69 (9th Cir. 1976), the Ninth Circuit addressed the question posed by defendant here: whether criminal contempt can be prosecuted by an indictment.  The court answered affirmatively, reasoning that "[a] prosecutor should be able to seek indictments in such cases independently of any directive of the court."  <u>Id.</u> at 71 n.1; <u>see also</u> <u>United States v. Williams</u>, 622 F.2d 830, 838 (5th Cir. 1980) ("Criminal contempt charges may be initiated by indictment . . . without any prior or precipitating action by the court.").  Notably, the court held that this power arose from 18 U.S.C. § 401, which recognizes that disobedience of a court order is a punishable offense.  <u>Steinert</u>, 543 F.2d at 70; <u>see also</u> 18 U.S.C. § 401(3).  Also significant in the instant case, the Fifth Circuit, relying on <u>Steinert</u>, has recognized that the power to prosecute contempt through an indictment encompasses contempts founded on a defendant's failure to adhere to the conditions of release.  <u>Williams</u>, 622 F.2d at 839 ("18 U.S.C. 401(3) provides punishment for the violation of any lawful court order, including orders entered pursuant to 18 U.S.C. § 3146(a)(2) restricting travel.").

In the superseding indictment, the government in the instant case charged defendant in Count 20 with contempt for violating the conditions of his release "by applying for an Egyptian passport . . . and by thereafter failing to surrender said passport to the Court . . . ."  (Mar. 15, 2005 Superseding Indictment ¶ 44.)  Under <u>Steinert</u> and <u>Williams</u>, and pursuant to

---

explains, the government attorney's authority has never been rooted in the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3160.

18 U.S.C. 401(3), the government's initiation of this charge via indictment was unquestionably proper.

Defendant argues that the 1984 amendments to the Bail Reform Act, which, as noted above, gave "judicial officers" the power to initiate contempt proceedings, necessarily worked a change in the law that undermined the federal prosecutor's power recognized in Steinert.  However, the provision cited by defendant, § 3148(c), was not intended to have such a sweeping effect.  Section 3148(c) was designed to respond to "criticisms of the [existing] Bail Reform Act [that it had] fail[ed] to provide adequate sanctions for the violation of release conditions."  S. Rep. 98-225, at 34 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3217.  The amendments thus merely sought to provide those sanctions.  Id.  These changes aside, Congress simply intended that it "carr[y] forward the provisions of existing 18 U.S.C. § 3151", which once read "Nothing in this chapter shall interfere with or prevent the exercise by any court of the United States of its power to punish for contempt."  Id. at 36; Brown v. United States, 410 F.2d 212, 217 n.10 (5th Cir. 1969).

Since "[c]riminal contempt is a crime in the ordinary sense," the court here is guided by "a presumption against a congressional intention to limit the power of the Attorney General to prosecute offenses under the criminal laws of the United States."  Bloom v. Illinois, 391 U.S. 194, 201 (1968); United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1366 (9th Cir. 1987).  Both the Supreme Court and the Ninth Circuit have noted that while Congress may reassign prosecutorial

12

1   responsibility, "[t]o graft such an exception upon the criminal

2   law . . . require[s] a clear and unambiguous expression of the

3   legislative will."  Gen. Dynamics Corp., 828 F.2d at 1366

4   (quoting United States v. Morgan, 222 U.S. 274, 282 (1911)).

5   Significantly then, nowhere in the legislative history cited

6   above did Congress express an intent to overrule cases such as

7   Steinert and Williams or to limit the federal prosecutor's power

8   to initiate contempt proceedings.  Indeed, as those cases did not

9   base the power of the government attorney to pursue criminal

10  contempt charges by indictment on the Bail Reform Act, the

11  possibility that § 3148(c) might interfere with this authority

12  was likely never discussed.

13      Accordingly, the provisions of the Bail Reform Act

14  addressing release and detention pending judicial proceedings do

15  not divest federal prosecutors of authority, pursuant to 18

16  U.S.C. § 401(3), to pursue criminal contempt charges using an

17  indictment.  Provisions like § 3148(c) entrust courts "with the

18  power to initiate contempt proceedings to ensure that the

19  judiciary is not utterly dependent upon the other branches of

20  government to vindicate judicial authority."  United States v.

21  Neal, 101 F.3d 993, 996 (4th Cir. 1996) (citing Young v. United

22  States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 793, 795-96

23  (1987) (discussing the courts' "inherent authority to initiate

24  contempt proceedings")).  But, section 3148(c) did not vest in

25  courts the sole power to commence criminal contempt proceedings.[5]

26

27          [5] As the government notes, the plain language of § 3148(c)
    is not restrictive.  The provision states in full that "[t]he
28  judicial officer may commence a prosecution for contempt, under

                                    13

See also <u>United States v. Doe</u>, 125 F.3d 1249 (9th Cir. 1997) (recognizing the government's power to file an information charging a defendant with criminal contempt when the court was not asked to initiate such proceedings in the underlying trial); <u>United States v. Armstrong</u>, 781 F.2d 700, 704 (9th Cir. 1986) (recognizing the long-standing "power of the grand jury to initiate contempt charges without any prior action by the court").

III. <u>Conclusion</u>

For the reasons given above, Counts 2 and 3 are not multiplicitous; Count 10 is insufficiently alleged; Counts 1 and 19 are sufficiently alleged in the indictment and do not need to allege materiality; and Count 20 was not improperly prosecuted.

IT IS THEREFORE ORDERED that defendant's motion to require the government elect between Counts 2 and 3 of the indictment be, and the same hereby is, DENIED without prejudice of the right of the defendant to renew the motion at the end of trial before judgment and sentencing if the jury should return a verdict of guilty on both counts 2 and 3.

---

section 401 of this title, if the person has violated a condition of release."  18 U.S.C. § 3148.  This reads like a grant of a unique prosecutorial power to the court, a power it does not typically have, and in no way suggests an intent to limit the government attorney's power to prosecute the crime of contempt. Government attorneys, unlike courts, already had the power to "commence a prosecution for contempt, under section 401" prior to the 1984 amendments to the Bail Reform Act.  <u>Cf. United States v. Roland</u>, No. 05-111, 2005 WL 2318866, at *8-9 (E.D. Va. Aug. 31, 2005) (reasoning that Congress' decision that one official "may" do something does not mean that "only" that official may perform the act and holding, contrary to <u>Herrera</u>, that the court may initiate revocation proceedings under section 3148(b) on a petition filed by the pretrial services officer, despite language suggesting that the government attorney must file the petition).

1    IT IS FURTHER ORDERED that defendants' motion to

2 dismiss Count 10 of the indictment be, and the same hereby is,

3 GRANTED.

4    IT IS FURTHER ORDERED that defendants' motion to

5 dismiss Counts 1, 19, and 20 of the indictment be, and the same

6 hereby is, DENIED.

7 DATED:  December 22, 2005

8

9

10    WILLIAM B. SHUBB
      UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15