UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

         Plaintiff,

    v.

AMR MOHSEN and ALY MOHSEN,

         Defendants.

CASE NO. CR. 03-0095 WBS

<u>ORDER RE: DEFENDANT'S SECOND MOTION TO SUPPRESS EVIDENCE OBTAINED DURING A SEARCH OF HIS JAIL CELL</u>

----oo0oo----

Defendant Amr Mohsen ("Defendant") moves a second time to suppress any and all evidence obtained during a search of his jail cell on June 15, 2005, pursuant to a warrant.  Defendant's first motion to suppress evidence was based on his assertion of the marital communications privilege and the claim that the government had insufficient procedural protections to preserve defendant's attorney-client privilege.  In his second motion to suppress the same evidence, defendant argues that the search violated his Fourth Amendment rights, the attorney-client privilege, and the work product doctrine.

1

I.   <u>Factual and Procedural Background</u>

On March 25, 2003, a 19-count indictment was filed charging defendant with one count of conspiracy to obstruct justice and to commit perjury in violation of 18 U.S.C. § 371 (Count 1), four counts of perjury in violation of 18 U.S.C. § 1621 (1) (Counts 2-5), one count of subornation of perjury in violation of 18 U.S.C. § 1622 (Count 10), eight counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 11-18), and one count of obstruction of justice in violation of 18 U.S.C. § 1503 (Count 19).  The trial of these charges was originally scheduled for March 31, 2004 before Judge Alsup.  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Disqualify 6.)  On March 27, 2004, defendant was arrested based upon information that he was planning to flee the country.  (<u>Id.</u>)  On March 29, 2004, Judge Alsup ordered defendant to be detained in the Santa Rita jail pending trial.  (<u>Id.</u>)

While defendant was detained at the Santa Rita jail, an inmate contacted law enforcement and reported that defendant wanted him to facilitate acts of murder and witness intimidation. (Def.'s Mot. to Suppress Jail Cell Evidence Ex. B (Application & Aff. for a Search Warrant ¶¶ 4, 5, 18).)  Agents of the Federal Bureau of Enforcement, in turn, obtained a search warrant for defendant's jail cell.  (Montoya Decl. ¶ 2.)  The search was conducted by F.B.I. Special Agents Joseph Montoya and Charles John Gunther and took place on or about June 15, 2004.  (<u>Id.</u> at ¶¶ 1, 2.)  Montoya and Gunther discovered a number of items for which seizure was authorized by the warrant.  (<u>Id.</u> at ¶ 3.)  The

agents collected and seized all of these materials.  (Id. ¶ 3.)[1]
Included in the material seized were some handwritten notes,
attached as Exhibit 3 to the government's opposition to the
previous motion; some of which are attached as Exhibit A to
defendant's declaration.

Special Agent Gunther delivered all of the seized
materials to Assistant United States Attorney Ben Burch.
(Montoya Decl. ¶ 3; Gunther Decl. ¶ 3.)  The application and
affidavit for this search provided that

> [i]n order to protect Mohsen's attorney-client privilege, this search will be executed by FBI Special Agents and an experienced Assistant United States Attorney ('AUSA'), Charles Ben Burch, who is one of the Professional Responsibility Officer [sic] for the United States Attorney's Office, all of whom will not be further involved in the prosecution of Mohsen's criminal case.

(Def.'s Mem. in Supp. of Mot. to Suppress Ex. B (Application &
Aff. for Search Warrant) ¶ 25.)  Former AUSA (now Judge) Burch

---

[1] According to an F.B.I. form filed by Agents Montoya and Gunther the day after the search,

> The following items of evidence were seized:
>
> 1. Book entitled "Sybil."
> 2. Documents referring to "Kemo" and mental disorders.
> 3. Writings referring to Psychological Disorders and medications.
> 4. Book entitled "DSM-IV".
> 5. Book entitled "A Beautiful Mind".
> 6. Book entitled "I Can See Tomorrow".
> 7. Handwritten notes (21 pages), page 1 addressed to Mervat.
> 8. Document with Arabic writing, and two papers with "KEMO" "408-428-0388".
> 9. Document pertaining to Insanity Trial.
> 10. Documents in Arabic, and Documents referring to Harm, and medication.
> 11. Documents referring to medication and mental illness; envelope with medication.
> 12. Five envelopes with various medications hidden in a book.

(Montoya Decl. Ex. 1 (June 16, 2004 Post-search form).)

3

declares that the procedure was followed: he screened the written documents seized for those that, in his estimation, were privileged. (Burch Decl. ¶ 3.) Of the 21 pages of handwritten notes, three of those pages were withheld by Burch from the prosecuting attorneys. (Id. at ¶ 4.)

On July 27, 2004, the grand jury issued a superseding indictment charging Amr Mohsen with contempt of court in violation of 18 U.S.C. § 401(3) (Count 20), attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1) (Count 21), solicitation to commit arson in violation of 18 U.S.C. § 373 (Count 22), and solicitation to commit the murder of a federal judge in violation of 28 U.S.C. § 373 (Count 23).

Defendant first moved to suppress evidence seized from a search of his jail cell on August 8, 2005. The court denied that motion and held that defendant did not have a reasonable expectation of privacy with respect to the contents of his jail cell, the search procedure did adequately protect the search and/or seizure of documents falling within the attorney-client privilege, and the marital communications privilege did not apply to defendant's handwritten notes. (Oct. 5, 2005 Order re: Mot. to Suppress Evidence Seized in Def.'s Jail Cell.) Defendant now moves again to suppress evidence obtained from the search of his jail cell, this time arguing that: (1) his Fourth Amendment right was violated by the search, (2) the government lacked probable cause to conduct the search, and the warrant issued contained misleading and false information, (3) items that were seized that are not listed in the warrant should be suppressed as outside the scope of the search, (4) items that were in an envelope stamped

with the words "attorney-client materials" should be suppressed because they are protected under the attorney-client privilege and work-product doctrine, and 5) information from the confidential informant to the government should be suppressed as a violation of the attorney-client privilege because the informant was serving as defendant's paralegal.

II. Discussion

The Fourth Amendment to the U.S. Constitution provides that,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Am. IV. In order to allege a Fourth Amendment violation, a defendant must possess a "reasonable expectation of privacy" in the place searched. Minnesota v. Carter, 525 U.S. 83, 101 (1998).

The court has previously noted that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." (Oct. 25, 2005 Order 6; citing Hudson v. Palmer, 468 U.S. 517, 525 (1984).) It has also noted that the Fourth Amendment protects neither defendants who are in prison before trial nor defendants who are in prison because they have been convicted of a crime. (Id., citing Hudson, 468 U.S. at 538); see also Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996) ("An inmate ordinarily has no reasonable expectation of privacy as to his jail cell or his

possessions within it."); <u>United States v. Van Poyck</u>, 77 F.3d 285, 287, 290-91 (9th Cir. 1996) (finding that a pretrial detainee's minimal or nonexistent expectation of privacy in phone calls made from jail means that "the Fourth Amendment is therefore not triggered by the routine taping of such calls"); <u>Portillo v. U.S. Dist. Court for Dist. of Ariz.</u>, 15 F.3d 819, 823 (9th Cir. 1994) ("[I]t is well established that society does not recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell."); <u>Nakao v. Rushen</u>, 766 F.2d 410, 412 (9th Cir. 1985) ("[B]ecause a prisoner does not have a reasonable expectation of privacy in his prison cell, the fourth amendment's proscription against unreasonable searches does not apply to the confines of a prison cell.").

     The Second Circuit has not read <u>Hudson</u> so broadly and instead interprets it to permit warrantless searches of prison cells only when done to serve institutional needs of the prison. <u>United States v. Cohen</u>, 796 F.2d 20, 24 (2d Cir. 1986). Significantly, however, the Ninth Circuit precedent cited above constrains the court to read <u>Hudson</u> as expansively as its language suggests and to find that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." <u>Hudson</u>, 468 U.S. at 525-26. Moreover, in <u>Cohen</u>, 796 F.2d at 24, an Assistant United States Attorney improperly initiated a warrantless search solely to obtain information for a superseding indictment. The situation in <u>Cohen</u> is somewhat analogous to the situation in this case, but with one major exception. In this case, the government obtained a warrant before conducting a search of defendant's

cell.

### A. Validity of the search warrant

Even where a defendant maintains a reasonable expectation of privacy, the government may conduct a search pursuant to a valid warrant. United States v. Jacobsen, 466 U.S. 109, 120, n. 17 (1984) (citations omitted). "To say that a warrant is required for a search is to say that the police must get judicial approval [that there is probable cause to search] before acting." United States v. Warren, 997 F. Supp. 1188, 1194 (E.D. Wis. 1998). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause . . . ." Ill. v. Gates, 462 U.S. 213, 245 n.13 (1983).

Defendant argues that the affidavit submitted to the magistrate to obtain the warrant contained false and misleading statements and omissions of fact, and further that this dishonesty was necessary to establish probable cause.[2] (Def.'s

---

[2] Defendant also argues that the information in the affidavit that came from a confidential informant was obtained in violation of the Sixth Amendment right to prepare a defense because the informant was defendant's paralegal. (Def.'s Mot. to Suppress Jail Cell Evidence 10.) Defendant only cites United States v. Irwin, 612 F.2d 1182 (9th Cir. 1980) for support. However, Irwin dealt with governmental interference in conversations between a defendant and his attorney, so it does not directly pertain to the situation of a "paralegal" turned government informant. In addition, the "extension of the [attorney-client] privilege to non lawyers [] must be strictly confined within the narrowest possible limits consistent with the logic of its principle and should only occur when the communication was made in confidence for the purpose of obtaining legal advice from the lawyer." In re: Cendant Corp. Sec. Litig., 343 F.3d 658, 661 (3d Cir. 2003) (quoting Blumenthal v. Drudge, 186 F.R.D. 236, 243 (D.D.C. 1999)). Here, defendant contends

7

Mot. to Suppress Jail Cell Evidence 7-8.)  Defendant requests that the court hold an evidentiary hearing to decide this issue. (Id.)  The Supreme Court has found that:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the alleged false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  Therefore, in order to receive a Franks hearing, defendant must (1) make a substantial preliminary showing that a (2) false statement was included in the affidavit (3) knowingly and intentionally or recklessly, and (4) that said false statement is necessary to a finding of probable cause.

In Franks, the defendant made a substantial preliminary showing that merited a hearing when he claimed that two of the sources quoted in the affidavit were not personally interviewed by the warrant affiants.  Id. at 158.  In addition, although they may have spoken with another police officer, they did not give any officer the information for which they were quoted, and defendant further charged that this information was included in the affidavit in bad faith.  Id.  The Court specifically noted

---

that he hired the paralegal himself, and makes no mention of any relationship or communications between the paralegal and defendant's attorneys.  Extending Sixth Amendment protection to this relationship, without more, would be inconsistent with confining the privilege "within the narrowest possible limits." Finally, defendant has not claimed that his interactions with the paralegal related to communications "made in confidence for the purpose of obtaining legal advice from the lawyer."  Therefore, defendant has not established that his Sixth Amendment rights were violated.

8

1 that there is "a presumption of validity with respect to the
2 affidavit supporting the search warrant," and that "the
3 challenger's attack must be more than conclusory and must be
4 supported by more than a mere desire to cross-examine." Id. at
5 171.  Not only must there be allegations of deliberate falsehoods
6 by the affiant, but there also must be an offer of proof.  Id.
7 "Affidavits or sworn or otherwise reliable statements of
8 witnesses should be furnished, or their absence satisfactorily
9 explained."  Id.

10          Defendant has not made a showing that rises to the
11 level of the preliminary showing required in Franks, and his
12 allegations therefore do not merit a hearing.  First, defendant
13 has not shown that a false statement was included in the
14 affidavit.  Instead, defendant has alleged that there are
15 omissions of fact within the affidavit that would have placed his
16 behavior in a much less suspicious light.  Specifically,
17 defendant points out the omission of the fact that he had been
18 diagnosed with and treated for depression and that he had
19 experienced other symptoms of mental health problems.  (Def.'s
20 Mot. Suppress Jail Cell Evidence 9.)  He argues that this omitted
21 fact would have made the question he posed to his daughter, a
22 psychology student, regarding the symptoms of psychosis seem less
23 suspect. (Id. at 8.)

24          Defendant's argument relies on omission of information,
25 not the clear incorporation of falsehoods into the affidavit.  It
26 is far from clear that these facts were omitted "intentionally
27 and knowingly or with a reckless disregard from the truth."
28 Franks, 438 U.S. at 154; see also United States v. Meling, 47

9

1  F.3d 1546, 1553 (9th Cir. 1995) ("Defendant disbelieves the FBI
2  [in its claim that it unintentionally omitted facts from the
3  affidavit], but that disbelief does not amount to the substantial
4  showing required under Franks."); United States v. Perdomo, 800
5  F.2d 916, 920 (9th Cir. 1986) (finding that challenging the
6  veracity of the informant to an affiant was not enough under
7  Franks; challenging the veracity of the affiant was required).
8  Furthermore, defendant's offer of proof is not a "substantial
9  showing;" it is limited to a declaration by counsel, a redacted
10 search warrant affidavit, and some notes of his that were seized
11 in the search.  (Id. Exs. A-C.)  He does not provide "affidavits
12 or otherwise reliable statements of witnesses;" nor does he
13 explain their absence.  Finally, defendant's information, whether
14 present or absent, was unlikely to have affected the
15 determination of probable cause.
16         Defendant's behavior arguably could have been depicted
17 in a less suspicious light; nonetheless, there was some
18 probability that defendant was planning to commit criminal
19 activity.  See Gates, 462 U.S. at 245 n.13 ("[P]robable cause
20 requires only a probability or substantial chance of criminal
21 activity, not an actual showing of such activity. By hypothesis,
22 therefore, innocent behavior frequently will provide the basis
23 for a showing of probable cause . . . .").  Even if defendant was
24 suffering from depression, that would not preclude defendant from
25 attempting to fabricate another mental illness that would be more
26 amenable to an insanity defense.  Furthermore, the defense merely
27 comes to one, relatively reasonable, conclusion of the several
28 that exist to explain the same set of facts.  Given the fairly

undemanding standard to establish probable cause, defendant has not sufficiently shown its absence to merit a <u>Franks</u> hearing.

### B. Execution of the search warrant

Defendant also argues that certain items that were seized should be suppressed because they were outside the scope of the search warrant, and points to nine pages written by defendant that were not described in the warrant. (Def.'s Mot. to Suppress Jail Cell Evidence 11.) As an initial matter, "[a] search must be limited to the terms of the warrant." <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 394 n. 7 (1971); <u>see also</u> <u>United States v. Tamura</u>, 694 F.2d 591, 595 (9th Cir. 1982). The terms of the warrant here included the following description of evidence to be seized in item 4: "Any and all notes . . . and other written materials referring to any mental, emotional, or psychiatric condition, including, the 'Diagnosis Manual of Mental Disorder IV;' 'A Beautiful Mind;' 'Sybil;' and 'Psychotic Drugs-Fast Facts.'" (Def.'s Mot. to Suppress Jail Cell Evidence Ex. B Search Warrant Attach. A.)

The officers conducting the search here seized documents that were grouped together, some of which were the pages highlighted by defendant as being outside of the scope of the warrant. (USA's Opp'n to Def.'s Motion to Suppress Jail Cell Evidence 17.) Specifically, although pages G1, G2, and G8 admittedly fell under the description in item 4 of the search warrant in that defendant discusses an insanity defense within them, defendant argues that pages G3, G4, G5, G6, G7, and W1 of that same set of papers did not. However, the court notes that almost every one of the pages admittedly within the scope of the

11

warrant ends in the middle of a sentence which is completed in the next page argued to be outside the scope of the warrant.  It was necessary to have the contested pages to put the other pages in context.  It would be foolish to expect the government to seize only some pages in the series and leave behind the others.  To do so would have invited even more criticism from the defense.

### C. Materials subject to the attorney-client privilege

Defendant also contends that some materials seized from his cell were in an envelope labeled attorney-client materials, and should be suppressed pursuant to the attorney-client privilege and work product doctrine.  In support, defendant submits his declaration that there were items in an envelope so marked. (Amr Mohsen Decl., Oct. 31, 2005 ¶ 2, Ex. A.)  The government counters that the items contained in Exhibit A were not in one envelope, but were found scattered throughout the jail cell. (USA's Opp'n to Mot. to Suppress Jail Cell Evidence 18 (citing Montoya Decl. ¶¶ 5-6).)  In addition, the government claims that no envelope labeled "Attorney-Client Materials" was found in the search. (Montoya Decl. ¶¶ 7-21.)

Thus, the court has before it two declarations that contradict each other.  To determine which version to accept, the court would ordinarily hold an evidentiary hearing.

However, even if defendant is correct that these documents were in an envelope labeled "attorney-client materials," they would still not be protected by the attorney-client privilege because of the crime-fraud exception.  Communications made to a lawyer in order to effect a criminal purpose are not protected by the attorney-client privilege.

1  United States v. Martin, 278 F.3d 988, 1001 (9th Cir. 2002)
2  (citing United States v. Zolin, 491 U.S. 554, 563 (1989)).[3]

> The test for invoking the crime-fraud exception to the attorney-client privilege is whether there is "reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme." Reasonable cause is more than suspicion but less than a preponderance of evidence. The government must submit "evidence that[,] if believed by the jury[,] would establish the elements of an ongoing violation."

United States v. Chen, 99 F.3d 1495, 1503 (9th Cir. 1995). The attorney's state of mind regarding the communications is not relevant; what matters to the determination is the client's knowledge and intentions. Martin, 279 F.3d at 1001.

Defendant claims privilege for documents he wrote and compiled in preparation of the defense in his criminal case, with the intention of giving them to his attorneys. (Amr Mohsen Decl. ¶ 2.) The documents clearly demonstrate reasonable cause to believe that defendant intended to use his attorneys' services to mount a false insanity defense, starting with the legal standard for mounting an insanity defense and then constructing a narrative such that defendant could meet that standard. The first document included is a sample fax that appears to consists

---

[3] Zolin contains a two-step procedure for determining whether privileged material is subject to the crime-fraud exception when that material is being withheld by the party claiming privilege. 491 U.S. at 572. First, the opposing party must make a prima facie showing that the crime-fraud exception applies, and next, the court holds an in camera privilege hearing. Id. However, defendant has attached to the declaration of Amr Mohsen, executed on October 31, 2005 all the documents for which he claims the privilege. Therefore, the extra procedures to protect privileged information that were outlined in Zolin are not required.

13

of notes about a patient with either dual personality disorder or multiple dissociative identity disorder.  (Amr Mohsen Decl., Oct. 31, 2005 ¶ 2, Ex. A. at US006123.)  The patient is described as having a primary, passive identity and an alternate identity or identities that were controlling, hostile, and self-destructive with more complete memories.  (Id.)

A large portion of the exhibit is a chapter from Matthew Bender entitled "Insanity Trial" with notations and emphasis on various passages.  (Id. at US006125-40.)  Portions of the article relating to procedure in an insanity trial and the standard by which the insanity defense is determined have been underlined.  (Id. at US006125, US006131.)  Particular emphasis was added to sections relating to the M'Naghten Standard for determining whether insanity can be used as a defense, underlining and circling a section that explains that a defendant must prove that he was incapable of "knowing and understanding the nature and quality of his act."  (Id. at US006126.)  In addition, there was emphasis added to the phrase "personality or adjustment disorder" and to the following portion: "proof that the defendant knew that his or her act was against the law will not preclude a finding of insanity if he or she was not aware that the act was inherently or morally wrong."  (Id.)  Emphasis was also placed on the following portion: "If found sane, the defendant must be sentenced.  If found insane, the defendant must be committed to a treatment facility, unless it appears to the court that the defendant has fully recovered sanity."  (Id. at US006134.)  Defendant appears to have wanted to discuss the insanity defense with his attorneys and was conducting research

on the various elements of the defense.

        Throughout the documents, there are multiple references to multiple identity disorder and its symptoms and various medications.  (Id. at US006141-42, US006152.)  In addition, there is a Prison Health Services Medical Request Form on which defendant self-reports suffering from a headache, insomnia, fatigue, lack of energy, an inability to focus or make decisions, and foggy thinking, and notes the use of some medication.  (Id. at US006143.)  Next, there is a report written by defendant titled "Report from Phsychiatrist/Physychologist [sic]."  (Id. at US006151.)  This "report" includes information about personality disorder and its symptoms of insomnia, headache, foggy thinking, and an inability to make critical decisions.  (Id. at US006151.)  Thus, there is reasonable cause to believe that defendant was constructing a mental illness that fit in with the legal standard for insanity and that he hoped to receive a diagnosis in support of that from prison medical services.

        Furthermore, in these pages, there is also reasonable cause to believe defendant was constructing a narrative about the genesis of his multiple identity disorder.  In defendant's own writing, certain pages read like a psychiatrist's notes about defendant and include a narrative about a personality disorder arising from defendant's early experience of trauma and molestation that resulted in the creation of two identities: Amir [sic] and Omar.  (Id. at US006155-57.)  Amir was repressed and entrapped by his father's expectations and conditional love; Omar was unrestrained and expressed the seething/boiling rage that Amir could not.  (Id. at US00626.)  There are also notes on

15

"Substance-Induced Persisting Amnestic Disorder," and the medications that may cause this disorder. (Id. at US006158.) On one page, defendant notes "[w]hen Amr is angry - AID Omar takes over to defend him. . . Usually Omar is not reluctant to return the body." (Id. at US006159.) This, in particular, fits in with the pages from Matthew Bender and the notion of a defendant who is periodically mentally ill but could recover – the kind of defendant who could commit a crime under the influence of insanity and thus be acquitted, but not one who would then be committed to a mental institution. (See id. at US006134.)

To reiterate the court's holding in Chen, 99 F.3d at 1503, reasonable cause requires more than a suspicion, but less than a preponderance of the evidence. Defendant's writings and annotations clearly offer a great deal more than a reasonable suspicion that defendant was attempting to use his attorneys' assistance to obstruct justice by fabricating a defense of mental insanity. There is reasonable cause to believe that defendant is attempting to apply the law to determine what facts would lead to the most favorable outcome in his case, and his intention in sending these documents to his attorneys was to seek their assistance in fabricating an insanity defense that would help him to avoid criminal liability.

Moreover, another page of an example of a fax from a psychologist begins with the phrase "TO WHOM IT MAY CONCERN" and describes the psychological therapy provided by Dr. Mohammed Ahmad in Cairo to defendant since the early 1960s. (Id. at US006162.) This "fax" describes defendant's depressive disorder with psychotic features of hallucinations and memory gaps and

further notes the drugs prescribed to defendant." (Id.)  The "fax" also notes that Dr. Ahmad died in 2002, his therapy was taken over by one Dr. Habib, and then Dr. Habib died last year. (Id.)  Thus, these pages set out a record of a previous mental illness that would be difficult to corroborate, as the expert witnesses supposedly responsible for the diagnosis are deceased.

Finally, the last page of the documents for which the defendant claims privilege has three separate diagnoses, listed as A, B, and C.  (Id. at US006163.)  The first is multiple personality disorder/dissociative identity disorder 300.14, the second is substance-induced persisting amnestic disorder 292.83, and the third is obsessive-compulsive personality disorder and attention-deficit disorder.  (Id.)

Taken together, this evidence prevents much more than a suspicion that defendant was constructing a mental illness that would allow him to plead the defense of insanity, and that he was seeking his attorneys' help in obtaining expert witnesses and arguing this defense at trial.  See Chen, 99 F.3d at 1503. Because there is reasonable cause to believe that defendant intended to engage his attorney in the obstruction of justice in future proceedings by fabricating a mental health defense that would absolve him of guilt, the crime-fraud exception to the attorney-client privilege applies to these communications.[4]

---

[4] Defendant makes a conclusory statement that the work product doctrine applies to these documents and does not cite caselaw.  The court notes that the work product doctrine does not apply to these communications written by defendant, because they were not written by, or prepared at the request of, his attorney. Walker v. County of Contra Costa, 227 F.R.D. 529, 536 (N.D. Cal. 2005) (affording no work product protection to a document because

1        At the hearing on the motion, counsel for defendant
2 made the additional argument that the last four words, "including
3 books on psychosis," in paragraph 20 of the Affidavit in Support
4 of the Search Warrant should be stricken because they amount
5 information about defendant's trial strategy which should be
6 suppressed under Massiah v. United States, 377 U.S. 201, 206
7 (1964).  The court need not determine whether that phrase does
8 amount to a revelation concerning defendant's trial strategy, or
9 whether it should be excluded from the affidavit, because the
10 court finds under Franks that if those words are expurgated from
11 the affidavit it would still contain probable cause to support
12 the issuance of the warrant.

13 III. Conclusion

14        The court finds that the defendant had no reasonable
15 expectation of privacy in his jail cell, the search warrant was
16 properly obtained, and defendant's description of the
17 government's confidential informant as his "paralegal" does not
18 implicate the attorney-client privilege.  Further, items that
19 defendant contends were in an envelope stamped with the words
20 "attorney-client materials" should not be suppressed because they
21 are subject to the crime-fraud exception to the attorney-client
22 privilege.
23 ///

---

the work product doctrine must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," and there was "no reason to believe that the [document at issue] contains mental impressions, opinions or legal theories of an attorney.")

Case 3:03-cr-00095-WBS   Document 442   Filed 12/22/05   Page 19 of 19

IT IS THEREFORE ORDERED that defendant's motion to suppress the evidence that was obtained from the search of defendant's jail cell be, and the same hereby is, DENIED.

DATED: December 22, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE